**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-3859

GRANT MANUFACTURING & ALLOYING, INC.,

Appellant.

v.

GREGORY McILVAIN; DARYL WILLIAMS

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 5-10-cv-01029)
District Judge:  Honorable Juan R. Sanchez

Submitted under Third Circuit LAR 34.1(a)
on September 14, 2012

Before:  SCIRICA, ROTH and BARRY, Circuit Judges

(Opinion filed: October 2, 2012)

O P I N I O N

**ROTH**, Circuit Judge:

Grant Manufacturing & Alloying, Inc. brought suit against Gregory McIlvain and

Daryl Williams, alleging violations of the Computer Fraud and Abuse Act (CFAA), 18

U.S.C. § 1030, and Pennsylvania law.  The District Court granted summary judgment in

favor of Grant as to all federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. Grant appeals that decision. For the reasons stated below, we will affirm the District Court's grant of summary judgment.

## I. <u>Background</u>

We write primarily for the parties, who are familiar with this case. Therefore, we will set forth only those facts necessary to our analysis.

Grant is a manufacturer of tin, tin alloys, and specialty products serving the electronics, plating, and tin chemical industries. McIlvain and Williams began working for Grant as sales representatives in 1986 and 1988, respectively. On February 19, 2010, McIlvain and Williams resigned from Grant to work for Nathan Trotter and Company, Inc., one of Grant's competitors.

The day before McIlvain and Williams resigned from Grant, McIlvain accessed Grant's computerized purchase order system and marked sixty-three customer and distributor records for deletion. On the date of McIlvain and Williams's resignation, Jeffrey Fried, Grant's independent information technology consultant, came to Grant's offices to work on transitional issues and discovered the records that McIlvain had marked for deletion. When Fried alerted Grant to this fact, Grant asked Fried to examine all data in the computer system to determine whether McIlvain or Williams had tampered with any other records. Fried did so and compiled a number of reports showing that Grant's computer records had been altered in the week before McIlvain and Williams's departure. Fried could not determine exactly when during that period the changes were made or who made the changes. Grant contends that McIlvain and Williams modified

2

the computer records prior to their resignation to make Grant's pricing less competitive and to sabotage its business.

Fried billed Grant $9,312.50 for the work he performed relating to McIlvain and Williams's departure. The charges were related to routine transitional matters as well as the tasks of restoring the data that McIlvain marked for deletion and verifying the integrity of Grant's computer system. Fried's time entries on the invoice submitted to Grant specify the dates and the number of hours he worked, as well as the tasks he performed. However, the entries do not distinguish between the time spent working on issues relating to McIlvain and Williams's alleged malfeasance and the time spent on routine transitional issues. At his deposition, Fried was not asked, nor did he state, how much of his bill was attributable to McIlvain and Williams's alleged misconduct.[1] Fried also testified that he was able to restore the data marked for deletion in about fifteen seconds and that this task alone would cost about $100.

## II. Jurisdiction & Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting summary judgment, and, in doing so, resolve all factual disputes and draw all reasonable inferences in the light most favorable to the non-moving party. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). Summary judgment

---

[1] Due to a scheduling conflict, Grant's counsel was unable to attend Fried's deposition. Grant's motion to quash the subpoena for Fried's deposition was denied. Grant does not appeal that decision.

is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. <u>Discussion</u>

The sole issue in this appeal is whether Grant presented sufficient evidence to permit a jury to conclude that it had suffered more than $5,000 in losses, as defined by the CFAA. We agree with the District Court's determination that Grant failed to do so.

The CFAA permits private causes of action only if the conduct at issue causes a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]" 18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also id.* § 1030(g) (permitting private right of action). The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Grant brings three independent causes of action under the CFAA. The parties do not dispute that the $5,000 threshold applies to each cause of action. The parties also do not dispute that the only loss at issue is the $9,312.50 in costs incurred by Grant for Fried's services. Thus, the only way Grant could survive summary judgment was by presenting evidence that would permit a jury to infer that at least $5,000 of Fried's bill was attributable to a response to McIlvain and Williams's alleged CFAA violation.

As noted above, Fried's time entries do not indicate how long it took him to resolve issues related to a potential CFAA violation. The only evidence in the record is

4

Fried's deposition testimony, in which he stated that he spent about fifteen seconds restoring the data, which was worth about $100 of his time. Grant offered no other evidence at the summary judgment phase or on appeal showing that the costs associated with the alleged CFAA violations approximated $5,000. Therefore, the District Court correctly held that a reasonable jury could not find that Grant satisfied the $5,000 requirement because Grant submitted insufficient evidence showing how much time, or the proportion of time, Fried spent responding to McIlvain and Williams's alleged misconduct.

Grant's argument on appeal appears to be that vital evidence is missing from the record. In short, Grant asserts that, if its counsel had attended Fried's deposition, counsel would have been able to elicit testimony from Fried as to how much time he spent responding to the alleged CFAA violations and that this testimony would give rise to a genuine dispute of material fact. However, the fact of the matter is that Grant's counsel did not attend Fried's deposition, nor did Grant's counsel proffer any other admissible evidence on this critical issue. Absent any evidence in the record suggesting that Fried needed more than a few moments to address the purported CFAA violation, a jury could not conclude that at least $5,000 of Fried's bill related to such a violation.

Because Grant has failed to present sufficient evidence that it suffered a loss as defined by the CFAA, we need not reach Grant's arguments concerning evidence of violations of specific provisions of the CFAA.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

5